IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY THOMAS MCCALLAN, ) <br> ) <br>     Appellant, ) <br> ) <br> v. ) <br> ) <br> CARLY B. WILKINS, ) <br> ) <br>     Appellee. ) | Case No. 2:21-cv-377-RAH <br> [WO] |

**MEMORANDUM OPINION AND ORDER**

    This cause is before the Court on Timothy Thomas McCallan's appeal from the bankruptcy court's order finding that McCallan, the debtor, cannot claim a Florida homestead exemption on his residential property in Melbourne, Florida. McCallan also appeals the bankruptcy court's decision to impose an equitable lien on the same property because the property was acquired using funds from a fraudulent debt-consolidation scheme that resulted in a $102,949,220.72 judgment against McCallan. Having considered the parties' briefs, the relevant law, and the record as designated, the Court finds that the bankruptcy court's opinion is AFFIRMED on both issues.

    **I.**     **APPELLATE JURISDICTION AND STANDARD OF REVIEW**

    This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). Venue is proper because an appeal "shall be taken only to the district court for the judicial district in

1

which the bankruptcy judge is serving." 28 U.S.C. § 158(a)(3).

The district court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Williams*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). On appeal, the district court reviews the legal conclusions of the bankruptcy court *de novo* and the bankruptcy court's findings of fact for clear error. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013).

A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *In re Walker,* 515 F.3d 1204, 1212 (11th Cir. 2008). That review must be undertaken with due regard "to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). The reviewing court oversteps the bounds of its duty if it undertakes to duplicate the role of the lower court. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 123 (1969) ("In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*."); *In re Englander,* 95 F.3d 1028, 1030 (11th Cir. 1996) (per curiam) (finding that reviewing court may not make independent factual findings); *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) (same).

A district court reviews equitable determinations by the bankruptcy court for an abuse of discretion. *See In re Kingsley,* 518 F.3d 874, 877 (11th Cir. 2008) (per curiam). "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach." *United States v. Frazier,* 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). "[W]hen employing an abuse-of-discretion standard, [the district court] must affirm unless [it] find[s] that the [bankruptcy] court has made a clear error of judgment, or has applied the wrong legal standard." *Id.*

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 16, 2016, McCallan was found civilly liable in a fraudulent debt-consolidation scheme to the tune of a $102,949,220.72 judgment entered against him. *See In re Allegro Law, LLC*, 545 B.R. 675, 675 (Bankr. M.D. Ala. 2016) (issuing judgment for $102,949,220.72 against McCallan and two affiliated companies, Seton Corp. and AmeriCorp., Inc.). That litigation, dating back to 2010, has included contempt findings against McCallan and personal attacks by McCallan's counsel on the presiding bankruptcy judge. *See, e.g., In re McCallan*, 633 B.R. 903, 905 (Bankr. M.D. Ala. 2021); *In re Allegro Law, LLC*, No. 10–30631–WRS, 2018 WL 2373639, at *1 (Bankr. M.D. Ala. May 23, 2018) (explaining history of the scheme and judgment).

That monetary judgment also has spun off litigation focused on McCallan's actions to allegedly thwart efforts by the bankruptcy trustee to collect on the

judgment. *See, e.g.*, *In re Allegro Law, LLC*, 608 B.R. 888, 890 (Bankr. M.D. Ala. 2019) (discussing incarceration of McCallan for being in contempt of court over nondisclosure of assets). One object in dispute concerns real property that McCallan and his wife, Jeanne McCallan, purchased in Melbourne, Florida, in 2004, paid off in 2009, and allegedly moved into in the summer of 2014. (Doc. 10-3 at 7, 44, 47, 85–88.) That property became the subject of a dispute when the trustee filed an objection to McCallan's homestead exemption claim as part of his November 18, 2016, Chapter 7 bankruptcy filing. (Doc. 5 at 13; Doc. 10-3 at 94.)

The primary issue in this appeal is whether the bankruptcy court's finding that McCallan established his domicile in Florida on September 7, 2016—too late to take advantage of a homestead exemption in his bankruptcy proceeding—is clearly erroneous. The other issue is whether the bankruptcy court abused its discretion in granting an equitable lien against the Florida property. Each is addressed in turn.

### III. DISCUSSION

#### A) Whether the Bankruptcy Court Clearly Erred When It Found That McCallan Established His Domicile in Florida on September 7, 2016

McCallan first challenges the bankruptcy court's finding that McCallan established his domicile in Florida on September 7, 2016, and not two years earlier in 2014, as he claimed.

As a preliminary matter, contrary to McCallan's assertion, the applicable standard of review on this issue is clear error, not abuse of discretion. *See, e.g.*, *In re*

*Felix*, 582 B.R. 915, 921 (BAP 6th Cir. 2018) (discussing domicile issue and noting that "the bankruptcy court was compelled "to marshal and weigh evidence," and "make credibility judgments," and therefore, the decision is reviewed for clear error.").

In considering the record under the clearly erroneous standard, this Court does not find that the bankruptcy court clearly erred in determining *when* McCallan first established his domicile in Florida. *When* McCallan became domiciled in Florida is crucial because under Section 522(b)(3)(A) of the Bankruptcy Code, a debtor is entitled to claim exemptions in the state "in which the debtor's *domicile* has been located for the 730 days preceding the date of the filing of the petition...." *In re Crandall*, 346 B.R. 220, 221 (Bankr. M.D. Fla. 2006). Therefore, McCallan's claimed domicile date of the summer of 2014 would allow him to claim the Florida homestead exemption over the rights of the bankruptcy trustee, while a domicile date of September 7, 2016, would not.

Federal common law governs the meaning of "domicile" for purposes of Section 522. *See In re Mendoza*, 597 B.R. 686, 688 (Bankr. S.D. Fla. 2019). Under such law, a person's domicile is established "by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *In re Hodgson*, 167 B.R. 945, 950 (D. Kan. 1994), *citing Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989). A change in domicile requires physical

presence at the new location along with an intention to remain there indefinitely or the absence of any intention to go elsewhere. *In re Lordy*, 214 B.R. 650, 662 (Bankr. S.D. Fla. 1997); *In re Ring*, 144 B.R. 446, 449–450 (Bankr. E.D. Mo. 1992), *citing Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir. 1981) (per curiam).

In *District of Columbia v. Murphy,* the United States Supreme Court discussed several factors applicable to the domicile issue, including current residence; voting registration and practices; location of spouse and family; location of personal and real property; location of brokerage and bank accounts; memberships in churches, clubs, and other organizations; location of the person's doctors, dentist, accountant and lawyers; place of employment or business; driver's license and automobile registration; and payment of taxes. 314 U.S. 441, 455–458 (1941). However, the Supreme Court cautioned that "our mention of these considerations as being relevant must not be taken as an indication of the relative weights to be attached to them, as an implied negation of the relevance of others, or as an effort to suggest a formula to handle all cases that may arise, or the possibility of devising one." *Id.* at 458. A court must evaluate all relevant facts and circumstances when determining whether a person has established a new domicile. *Hodgson*, 157 B.R. at 950–51.

According to McCallan, he established his domicile in Florida in the summer of 2014 when he and his family moved from Northport, New York, to the Florida property to make it their new home. He alleges several facts supporting this

assertion, including among others that: McCallan's children were enrolled in Florida schools in 2014; his family consistently lived in the Florida property since 2014; he recorded a Declaration of Domicile with the Clerk of Court for Brevard County, Florida in September 2015; he had family located in the area; he maintained personal property in the Florida home; he and his family maintained membership in a Florida church; he retained legal counsel in Florida; he retained a Florida bookkeeper; he owned and maintained businesses in both New York and Florida; he procured a Florida driver's license in 2011; he registered his vehicles in Florida in 2014; and he paid taxes in Florida and New York. (Doc. 3-3 at 45–60; Doc. 5 at 13–16, 20–25.)

While McCallan's cited facts show that his position as to the date of his Florida domicile is factually supportable and therefore legitimate, the record does not show that the bankruptcy court clearly erred when it arrived at a different date of domicile. *See Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Indeed, reasonable minds can differ on the date of domicile and certainly could under the record in this case.

Here, the bankruptcy court's decision primarily was supported by three central facts—the September 2016 sale of McCallan's New York residential property, McCallan's execution on September 7, 2016, of the State of New York *Combined Real Estate Tax Return, Credit Line Mortgage Certificate, And Certification of*

*Exemption From the Payment of Estimated Personal Income Tax* (Certificate) (*see* Doc. 3-11 at 1, 4) in which he certified his residency in New York[1] as of September 7, 2016, and the timing of McCallan's filing for a homestead exemption for tax purposes in Florida just two days before his bankruptcy filing in November 2016.

In its decision, the bankruptcy court also discounted McCallan's testimony about his intention to reside in Florida in 2014 and 2015 because it found that "his actions belie" his self-serving statements. (Doc. 10 at 9.) Despite McCallan's protestations otherwise, the bankruptcy court was entitled to emphasize McCallan's credibility when weighing the *Murphy* factors. *Murphy*, 314 U.S. at 458 (holding there is no formula as to how to weigh the factors). When factual findings are based on determinations regarding the credibility of witnesses, greater deference to the court's findings must be given. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). Indeed, even the Supreme Court has recognized the caution that must be applied when considering the self-serving statements that support one's intent. *Murphy*, 314 U.S. at 456.

---

[1] Page 4 of the Certificate contained a declaration stating, "If you are a New York state resident, transferor(s)/seller(s) listed in Schedule A, you must sign below." (Doc. 3-11 at 4.) The Certificate further stated that, "This is to certify that at the time of the sale or transfer of the real property or cooperative unit the transferor(s)/seller(s), as signed below, was a resident of New York state, and therefore is not required to pay estimated personal income tax under Tax Law, section 663(a) upon the sale or transfer of this property or cooperative unit." (*Id.*) It is undisputed that McCallan and his wife signed the signature block labeled "Part I, New York state residents." (*Id.*) McCallan asserted doing so was an "innocent" mistake, but the bankruptcy court was entitled to reach a contrary conclusion based on its assessment of McCallan's credibility.

McCallan incorrectly asserts that the bankruptcy court ignored the evidence and abused its discretion. However, the bankruptcy court cited and considered the *Murphy* factors and merely reached a conclusion different from the one McCallan desires. And as to the September 7, 2016, date, the bankruptcy court did not pull it out of the sky. That date came from a document that McCallan signed and certified himself and presumably filed with the State of New York to avoid having to pay estimated personal income taxes. As McCallan certified in that document on September 7, 2016, "the transferor(s)/seller(s) below as signed below was a resident of New York State. . . ." (Doc. 3-11 at 4.)

Finally, McCallan's argument that the bankruptcy court conflated the standards for domicile and residence is meritless. While not entirely synonymous, there is significant factual overlap between residence and domicile, with domicile largely distinguished by considering one's intent to remain indefinitely. *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("And domicile requires both residence in a state and an intention to remain there indefinitely."). In that regard, the facts here are equally applicable under a domicile analysis, with the distinguishing characteristic being McCallan's stated intent, which the bankruptcy court considered to be lacking credibility.

In short, while the record reveals a significant number of facts supporting McCallan's assertion that he had established domicile in Florida as early as 2014,

9

there certainly were facts showing that domicile was first established over two years later, in September 2016. Based on the record before this Court and the due deference to the bankruptcy court's assessment of the evidence, including McCallan's credibility, this Court does not find that the bankruptcy court clearly erred. *See, e.g.*, *In re Felix*, 582 B.R. 915, 921 (BAP 6th Cir. 2018). And it is not within the province of this Court to make independent factual findings on *when* McCallan first established domicile in Florida. This Court's role is only to determine whether the bankruptcy court clearly erred. And here, it did not. Accordingly, as it concerns the issue of McCallan's domicile, the bankruptcy court's decision is AFFIRMED.

### B) Whether the Bankruptcy Court Abused its Discretion When Granting the Equitable Lien[2]

McCallan also contests the bankruptcy court's decision to impose an equitable lien against his Florida property despite his homestead exemption claim. For the reasons below, the bankruptcy court did not abuse its discretion in imposing the lien.

Determining the minimum standards for imposing an equitable lien under Florida law is a legal question reviewed *de novo*. *See Lee v. Wiand*, 603 B.R. 161,

---

[2] Whether this issue is properly raised in this appeal is disputed by the trustee. Nevertheless, the Court assumes without deciding that this issue is properly raised because even if so, McCallan's position lacks merit.

174 (M.D. Fla. 2018) ("The legal conclusion of whether an equitable lien may be imposed against an innocent homeowner is reviewed de novo.").

While Florida common law generally protects property jointly held by spouses in a tenancy by the entirety, it does not shield property acquired through fraud. *Fed. Trade Comm'n v. Life Mgmt. Servs. of Orange Cnty., LLC*, No. 6:16-cv-982-Orl-41TBS, 2019 WL 1093023 at *10 (M.D. Fla. Jan. 24, 2019). And despite the liberally construed Florida homestead exemption recognized in *Havoco of Am., Ltd. v. Hill,* 790 So. 2d 1018 (Fla. 2001), and prior cases, a court can impose an equitable lien on a Florida homestead when that property was acquired with funds obtained through fraud or other egregious conduct. *See, e.g.*, *Havoco,* 790 So. 2d at 1028. *See also In re Chauncey,* 454 F.3d 1292, 1294 (11th Cir. 2006); *In re Fin. Federated Title & Tr.,* 347 F.3d 880, 888 (11th Cir. 2003).

There are two components to the exception to the Florida homestead exemption: the existence of fraudulent or egregious conduct and tracing funds from that conduct to the acquisition of the homestead. *In re Fin. Federated Title & Trust,* 347 F.3d at 888. The bankruptcy court applied the correct law in its decision on both considerations.

As to the first component—the existence of egregious or fraudulent conduct—the bankruptcy court cited the volume of the fraud, the number of victims, the length of the fraudulent activity, and that McCallan targeted vulnerable victims in

his scheme, which resulted in a judgment of over $100,000,000 against him. (Doc. 10-2 at 39–40.) McCallan does not challenge this finding on appeal. Nor could he successfully do so.

It is the second component that McCallan primarily challenges. As to that issue, McCallan argues that, for there to be a fraudulent transfer, the transfer must come from a judgment debtor—which it did not since neither he nor his companies were judgment debtors at the time payments were made toward the mortgage. Therefore, Florida's general law on tenancies by the entirety applies, and the marital home would be protected under the homestead exception.

But McCallan's position finds no support in Florida law. As the trustee points out, an equitable lien can be imposed when "funds obtained through fraud or egregious conduct [are] used to invest in, purchase, or improve the homestead." (Doc. 10 at 16, quoting *Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018, 1028 (Fla. 2001)). *See also In re Fin. Federated Title & Tr. Inc.*, 273 B.R. 706, 717 (Bankr. S.D. Fla. 2001), *subsequently aff'd sub nom. In re Fin. Federated Title & Tr., Inc.*, 347 F.3d 880 (11th Cir. 2003) ("It is undisputed that the Defendants, through First R & R used fraudulently obtained funds to purchase the El Caballo Property, for which they gave no value to the Debtor."). And here, the bankruptcy court found that McCallan, although not a judgment debtor when payments were made, used

funds from his fraudulent scheme to pay and satisfy the outstanding mortgage balance on the Florida property, a sum of over $1,500,000.[3]

According to the trustee's forensic accountant expert, who had reviewed the financial records of McCallan and several of his affiliated companies, most of McCallan's mortgage debt was paid from the fruits of McCallan's fraudulent scheme. For example, the expert testified that, in 2008 and 2009, over $1,500,000 was paid to satisfy the mortgage, including over $1,000,000 from Intermark, an entity involved in McCallan's fraudulent scheme. (Doc. 10-3 at 44–45, 61–62, 74–76, 87, 100–01, 104, 107–08, 124; Doc. 3-3 at 6–7.) That payment was followed by several additional, smaller payments from a business account of Seton Corp. to McCallan that were almost immediately in turn made to the mortgage company, including payments of $150,000 in 2008 and $30,000 in 2009. (Doc. 10-3 at 25–33; Doc. 3-3 at 71.) All told, according to the expert, over $1,500,000 was paid towards the mortgage that was traceable to the various arms, both personal and corporate, of McCallan's fraudulent enterprise.

McCallan argues that the testimony of the trustee's expert about the sources of funds constituted an improper legal conclusion upon which the bankruptcy court

---

[3] McCallan and his wife purchased the property in 2004. Presumably, this was a purchase money transaction since the parties acknowledge that over $1,500,000 was used to satisfy a mortgage against the property in 2008 and 2009. Once the mortgage was satisfied, the property became unencumbered, and McCallan and his wife owned it free and clear.

improperly relied. He is wrong. It was a permissible expert conclusion that the bankruptcy court could consider. *See Fed. Trade Comm'n v. Am. Precious Metals, LLC*, 726 F. App'x 729, 733 (11th Cir. 2018) (per curiam).

At bottom, the Court finds no error in the bankruptcy court's factual findings, let alone clear error. *See Wachovia Bank N.A., Nat. Ass'n v. Tien*, 598 F. App'x 613, 618 (11th Cir. 2014) (per curiam) (finding that the court's factual finding that claimant was not the owner of funds was well supported by the record, including court's determination that forensic account was credible). McCallan has not shown that the bankruptcy court's factual findings were clearly erroneous, that the bankruptcy court applied the wrong law, or that it applied the law to the facts arbitrarily. Therefore, the bankruptcy court did not abuse its discretion in imposing an equitable lien against the Florida property.[4] *See In re Mazon*, 387 B.R. 641, 644–46 (M.D. Fla. 2008) (applying abuse of discretion standard on appeal to assess whether equitable lien was properly imposed).

## IV. CONCLUSION

For the preceding reasons, it is ORDERED that the memorandum opinion and order of the bankruptcy court (Doc. 10-2) is AFFIRMED.

---

[4] While McCallan challenges the ability to place an equitable lien against the property, he does not challenge the amount of that lien. Accordingly, the Court engages in no analysis regarding the amount of lien.

**DONE**, on this the 30th day of March, 2022.

                                           /s/ R. Austin Huffaker, Jr.
                                    R. AUSTIN HUFFAKER, JR.
                                    UNITED STATES DISTRICT JUDGE